IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDEPENDENTS GAS & SERVICE STATIONS ASSOCIATIONS, INC., an Illinois not-for-profit corporation, a/k/a I-Gas, <br><br>Plaintiff, <br><br>v. <br><br>CITY OF CHICAGO, <br><br>Defendant. | Case No. <br><br>Judge: <br><br>Magistrate: |

**COMPLAINT FOR DECLARATORY RELIEF**

NOW COMES the Plaintiff, Independents Gas & Service Stations Associations, Inc. a/k/a I-Gas (hereinafter "Independents" or "Plaintiff") by and through their attorney, SWEIS LAW FIRM, P.C., complaining of Defendant, CITY OF CHICAGO, as follows:

**INTRODUCTION**

1. Plaintiff Independents seeks to enjoin the city of Chicago from enforcing recently enacted Ordinance No. O2013-9185, a flavored tobacco regulation (hereinafter the "Ordinance"). The Ordinance prohibits the sale of flavored tobacco products, including menthol and menthol cigarettes, within 500 feet of "any public, private or parochial elementary middle or secondary school." *Id*. Exhibit A.

2. Independents is an association of independent small business owners and operators of gasoline service stations holding tobacco licenses in the city of Chicago. Most gasoline service stations consist of small retail merchandise establishments coupled with gasoline service pumps. Gasoline service pumps pump gasoline from underground storage tanks onsite. These businesses

1

are typically family owned and operated, involving acquisition costs of One Million Dollars or more and are often times purchased through secured lender financing.

3. Independents businesses operate at very low to zero profit margins when it comes to gasoline sales. Rather, Independents profit primarily from the retail establishments found on site. Due to their limited size and ability to manage inventory, these businesses rely on limited "driver" products and merchandising to bring in traffic. These "driver" products include cigarettes and other tobacco products, lottery and beverages.

4. Independents seeks relief on the grounds that the Ordinance is preempted by the Family Smoking Prevention and Tobacco Control Act (21 U.S.C. § 301 *et seq*.), thereby violating the Supremacy Clause of the U.S. Constitution in that the Ordinance establishes new tobacco product standards for flavored tobacco products, including but not limited to, cigarettes. Moreover, the Ordinance enacts tobacco product standards which are different from or in addition to the tobacco product standards stated in the Family Smoking Prevention and Tobacco Control Act, and which are expressly reserved to the federal Food and Drug Administration.

5. Independents seeks further relief on the grounds that the Ordinance violates the Due Process Clause of the Fourteenth Amendment in that the Ordinance is unconstitutionally vague and overbroad in numerous respects. The city of Chicago will not "grandfather" existing locations, making it impossible to know where a tobacco license can be continually maintained. Moreover, Chicago applies the Ordinance to schools that are not recognized by the Illinois State Board of Education making the Ordinance's application vague and overbroad.

**Federal Regulation of Certain Characterizing Flavor Tobacco Products**

6. In June, 2009 Congress passed the Family Smoking Prevention and Tobacco Control Act (hereinafter "FSPTCA" or "Act"), Pub. L. No. 111-31, 123 Stat. 1776 (June 22, 2009), granting authority to the federal Food and Drug Administration (hereinafter "FDA") to regulate tobacco products. Exhibit B.

7. The Act establishes, *inter alia*, tobacco product standards for flavored tobacco products and a "Special Rule" creating a tobacco product standard for cigarettes, and delegates authority to the FDA to adopt additional tobacco product standards for cigarettes and other tobacco products. The Act expressly preempts local laws that establish tobacco product standards, which are different from or in addition to, than those set forth in the Act.

8. In enacting the FSPTCA, Congress granted to FDA regulatory authority over tobacco products and tobacco product standards because "FDA is the only agency with the right combination of scientific expertise, regulatory experience and public health mission to oversee these [tobacco] products effectively. 155 Cong. Rec. H6652 (daily ed. June 12, 2009) (statement of Rep. Waxman); *see also* 155 Cong. Rec. S6021 (daily ed. June 3, 2009) (statement of Sen. Hagan) (the FSPTCA "grants FDA extremely broad authority to take action that it considers to be in the interest of public health").

9. In a section of the FSPTCA entitled "Tobacco Product Standards," the Act sets forth a tobacco product standard in the form of a "Special Rule for Cigarettes" that prohibits the use of cigarettes of "characterizing flavors" other than tobacco or menthol, stating that a

> cigarette or any of its component parts (including the tobacco, filter, or paper) shall not contain, as a constituent (including a smoke constituent) or additive, an artificial or natural flavor (*other than tobacco or menthol*) or an herb or spice, including, strawberry, grape, orange, clove, cinnamon, pineapple, vanilla, coconut, licorice cocoa, chocolate, cherry, or coffee, that is a

characterizing flavor of the tobacco product or tobacco smoke.

21 U.S.C. § 387g. (emphasis added). Neither this Special Rule nor any other provision of the Act prohibits the use of characterizing flavors has been modified by Congress or FDA.

10. The foregoing tobacco product standard is the outcome of extensive legislative debate, following which Congress decided to limit the ban on certain characterizing flavors to cigarettes, other than menthol and tobacco.

11. Congress was reluctant to ban all characterizing flavors in all tobacco products because of the potentially negative public health and economic consequences. Congress excluded menthol cigarettes from the federal ban, for example, because there was a significant risk of a black market for them.

12. A report submitted by the Congressional Committee on Energy and Commerce (hereinafter "Waxman Report") points out that regulating products like menthol cigarettes, a widely used product by over twelve million consumers, would pose issues of public health as any such regulation may lead to heavily addicted smokers suffering from "sudden withdrawal" with "unknown consequences." FSPTCA Report H.R., *Committee on Energy and Commerce*, at 38 (March 26, 2009).

13. The Waxman Report also points out: "In addition, the sudden removal of a legal source for such a product without the type of consideration and review that FDA will be able to conduct might unnecessarily increase the illegal black market risk, which could also pose a health hazard to users." *Id*.

14. In addition to prohibiting cigarettes with characterizing flavors other than menthol and tobacco, the FSPTCA provides FDA with authority, however, FDA must make "determinations

on sound information and scientific evidence and data…that is appropriate for the protection of the public health." 21 U.S.C. 387g(a)(3).

15. Approximately twenty five percent (25%) of cigarettes smoked are menthol cigarettes.

### City of Chicago's "Flavored Tobacco Products Ordinance"

16. On December 11, 2013, the Chicago City Council passed the Ordinance and Mayor Rahm Emanuel signed the Ordinance in law.  The Ordinance bans the sale of all flavored tobacco products, including cigarettes that contain a constituent that imparts a "characterizing flavor."  The Ordinance restricts its application to any seller of flavored tobacco products located within 500 feet of any public, private, or parochial elementary, middle, or secondary school located in the City of Chicago. Chicago Mun. Code § 4-64-180, as amended by Ordinance No. O2013-9185.

17. The Ordinance contains a *de minimus* exception for "retail tobacco stores," which are by definition retail operation earning at least 80% of its revenue from the sale of tobacco products. *See* Chicago Mun. Code § 7-32-010.

18. On information and belief, less than 5% of retail operations within the city of Chicago qualify as "retail tobacco stores" as defined under § 7-32-010 of the Chicago Municipal Code.

19. The Chicago Department of Consumer Affairs and Business Licensing is charged with enforcement of the Ordinance.  Repeated violation of the Ordinance results in revocation of the violator's tobacco sales license.

20. The FSPTCA preempts the Ordinance.  The Ordinance covers different and additional types of tobacco products than those covered by the federal standard, and thus is a requirement that is "different from, or in addition to" the federal tobacco product standard for the use of characterizing flavors in tobacco products.  Defining banned tobacco products on the basis of

their constituents or additives, the Ordinance functions identically to the federal standard for the use of characterizing flavors in tobacco products, including cigarettes.

21. The enforcement of the Ordinance will directly and irreparably harm Plaintiff. Plaintiff's products include cigars, cigarettes and a number of other tobacco products that the Ordinance could be construed as banning. The Ordinance will injure Plaintiff because it will prevent it from continuing to sell, or sell for resale, any flavored tobacco products in violation of rights guaranteed to Plaintiff under the Supremacy and Due Process Clauses of the United States Constitution. This Ordinance will result in lost profits and will likely cause widespread closings of gasoline service stations throughout the city of Chicago.

## JURISDICTION AND VENUE

22. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

23. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(3) because Defendant resides within the State of Illinois and within this judicial district.

## PARTIES

24. Plaintiff Independents is incorporated under the laws of Illinois with its principal place of business in Illinois. Independents is a not-for-profit organization of gasoline station owners and operators holding tobacco retail licenses, and sell, *inter alia*, cigars, cigarettes, smokeless tobacco and other tobacco products. Certain of Independents member products are deemed to be flavored tobacco products within the meaning of, and thus banned by, the Ordinance.

25. Defendant city of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

**Count I**
**Federal Preemption**

26. Plaintiff re-allege paragraphs 1 through 25 above as if fully set forth herein.

27. The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof…shall be the supreme Law of the Land." U.S. Const. art. VI. Local laws that conflict with federal laws are without effect.

28. The FSPTCA applies to "all cigarettes, cigarette tobacco, roll-you-own tobacco, and smokeless tobacco," as well as to any other tobacco products that FDA deems by regulation to be subject to the FSPTCA. 21 U.S.C. § 387a.

29. The FSPTCA states that any state or local regulation different from, or in addition to, the tobacco product standards promulgated by the FSPTCA is preempted:

> No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this chapter relating to *tobacco product standards*, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

21 U.S.C. § 387p(a)(2)(A). (emphasis added).

30. The FSPTCA's Tobacco Product Standard states:

> a cigarette or an of its component parts (including the tobacco, filter, or paper) shall not contain, as a constituent (including a smoke constituent) or additive, an artificial or natural flavor (*other than tobacco or menthol*) or an herb or spice, including strawberry, grape, orange, clove, cinnamon, pineapple, vanilla, coconut, licorice, cocoa, chocolate, cherry, or coffee, that is a characterizing flavor of the tobacco product or tobacco smoke.

21 U.S.C. § 387g.

31. The Ordinance bans "characterizing flavors" in cigarettes, including menthol. This tobacco product standard is a local requirement different from, and in addition to, FSPTCA's tobacco product standards.

32. The express language, structure and operation of the FSPTCA confirm that municipalities lack the authority to set tobacco product standards, especially standards that concern cigarettes and menthol.

33. The Act grants FDA authority to adopt other tobacco product standards only if FDA follows established rulemaking procedures to make findings and concludes that a standard is "appropriate for the protection of the public health." 21 U.S.C. § 387g(a)(3). This vesting provision, which is part of the very same section of FSPTCA in which Congress established a tobacco product standard for cigarettes with characterizing flavors, embodies Congress's intent to assign FDA exclusive authority to adjust the scope of the statutory tobacco product standard.

34. The FSPTCA preempts the Ordinance, rendering the latter without effect.

35. The Ordinance takes effect on October 15, 2014. In recent weeks the city of Chicago has distributed notices to some potentially affected locations admonishing the affected tobacco licensee all flavored tobacco inventory must be depleted by November 5, 2014. Plaintiff possesses a reasonable apprehension that the Ordinance will imminently affect and harm them, as set forth herein.

36. Accordingly, Plaintiff respectfully requests that, pursuant to 28 U.S.C. § 2201, the Court declare the FSPTCA preempts the Ordinance, rendering it unenforceable.

WHEREFORE, Plaintiff Independents Gas &Service Stations Associations, Inc., respectfully prays that this Honorable Court to enter judgment in its favor and against Defendant and, pursuant to 28 U.S.C. § 2201, declare that the FSPTCA preempts the Ordinance, rendering it unenforceable, and award any further relief this Honorable Court deems equitable and just.

### Count II
### Violation of Due Process – Fourteenth Amendment

37. Plaintiff re-alleges paragraphs 1 through 36 above as if fully set forth herein.

38. The Fourteenth Amendment prohibits states or localities from making or enforcing any law that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1.

39. A law is unconstitutionally vague under the Fourteenth Amendment if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.

40. The Ordinance is impermissibly vague and standardless in that it is overbroad and lacks certainty in its application to existing and future tobacco licensees in the city of Chicago.

41. Unlike other Chicago ordinances and through the use of a Tobacco Licensee Affidavit, the city of Chicago advises existing licensees that their establishments will not be "grandfathered" or otherwise exempt from the Ordinance.

42. The failure to "grandfather" existing locations allows the Ordinance to prospectively apply to *permitted* licensees upon the unforeseeable circumstance that any prescribed school opens, no matter its size, structure, duration in existence or recognition by the Illinois State Board of Education.

43. The result of a no "grandfather" provision makes is impossible for a retail operator to know where a tobacco license may be maintained continuously.

44. The 500 feet regulation is standardless, as applied. Regulations promulgated under the Ordinance create a measurement standard from "property line to property line."

45. Some schools have on their premises and off-site football, soccer, baseball fields and other structures and facilities. The Ordinance requires every retailer to know the boundaries of every structure owned by a school other than an actual school building and measure its location from that of the retailers with the degree of skill of a land surveyor.

46. The Ordinance applies to "schools" that are not recognized by the Illinois State Board of Education. As a result, a school, no matter its size, duration in existence, or accreditation will restrict a tobacco retailer from selling flavored tobacco products.

47. The 500 feet regulation is a guise to what is otherwise a "manifest destiny" ban of flavored tobacco products, including menthol cigarettes.

48. The Ordinance is unenforceable under the Due Process Clause of the Fourteenth Amendment.

WHEREFORE, Plaintiff Independents Gas & Service Stations Associations, Inc., respectfully prays that this Honorable Court to enter judgment in its favor and against Defendant and, pursuant to 28 U.S.C. § 2201, declare that the Ordinance invalid under the Due Process clause of the Fourteenth Amendment, and award any further relief this Honorable Court deems equitable and just.

Respectfully submitted,

/s/ David R. Sweis___
Attorney for Plaintiff

David R. Sweis (ARDC # 6293914)
Sweis Law Firm, P.C.
2803 Butterfield Road, Suite 170
Oak Brook, Illinois 60523
P. 630.575.8505
F. 312.268.7284